IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIAN RAMSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-0290-MJR-DGW |
| | ) | |
| CHARLES (CHUCK) BROY; MARK | ) | |
| LAWSON; JASON SERRILS; JAMES | ) | |
| WRIGHT; THOMAS CUNDIFF; KYLE | ) | |
| RINELLA; REBECCA CROUCH; JOSH | ) | |
| DUNNIGAN; MATTHEW MCVEY; | ) | |
| SHAWN LADD; and JOHN DOE, | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Now pending before the Court is defendants Shawn Ladd and Mark Lawson's motion for sanctions against plaintiff Brian Ramsey (Doc. 133). The motion which alleges plaintiff Ramsey engaged in "litigant misconduct and witness tampering" by attempting to bribe a neighbor in exchange for fabricated supporting testimony, has been fully briefed (Docs. 150, 151) and was submitted on an evidentiary hearing and oral argument (*see* Doc. 165).

Three related issues require attention before the Court addresses the sanctions motion.

### Motion for Extension of Time to Depose

The first is Ramsey's motion for extension of time to cross-examine John Yates (Doc. 169; *see also* Reply, Doc. 171), which is opposed (Docs. 170, 172) and will be denied.

First some background regarding the circumstances of this motion. After the hearing on the motion for sanctions on December 17, 2009, the Court realized that Ramsey deserved an opportunity to accumulate further evidence that would round out the record for the Court's decision. It came to this conclusion due to the in-hearing testimony of Charles Yates that his brother

John Gilbert Yates may have corroborating information regarding the alleged discussion between Charles and Ramsey that was the subject of the motion for sanctions. Additionally, the moving parties had filed an additional affidavit relatively close to the date of the motion hearing of a former litigant: Michelle Barnes. Given that the requested sanction—dismissal—is an extraordinary and extremely harsh sanction, the Court decided to give Ramsey ample time either to depose John Gilbert Yates and Michelle Barnes or to file their affidavits. The Court reserved ruling on the motion and gave the parties 60 days (to February 15, 2010) to supplement the record. In that same Order, given the allegations of witness tampering, the Court indicated:

> However, given the serious nature of the allegations of the defendants against Ramsey coupled with the testimony given in open court today, the Court finds that a prophylactic measure is appropriate for the Court to fairly and accurately decide this motion. The Court accordingly **ORDERS** Plaintiff Brian Ramsey to refrain from contacting Charles Yates, John Gilbert Yates or Michelle Barnes in any way directly or indirectly during the Court's consideration of the Defendants' motion for sanctions.

(Doc. 166 at 1–2.) This directive was given both in writing and from the bench in Ramsey's presence at the close of the hearing.

Despite the ample time to gather additional evidence for the benefit of Ramsey, counsel for the parties agreed to take the depositions on February 11, 2010, a scant four days before the Court requested that the depositions be submitted. Agreeing to this date proved unfortunate for Ramsey's counsel; he was trying a case that started at the end of January that lasted longer than he anticipated—all the way to the deposition date of February 11. That left counsel for Ramsey with a few options to cure his poor planning. He could have asked this Court for an extension, explaining his situation. Alternatively, he could have asked the court before which he was trying the case for a brief continuance, explaining that one of his clients was facing a motion for sanction of dismissal and that it was crucial for him to take this deposition. He chose another avenue, sending a substitute

attorney to conduct the deposition of John Gilbert Yates and Michelle Barnes which are now filed with the Court.

Even though he had ample time to complete the record in this case, Ramsey has come forward asking for an additional opportunity to examine John Yates claiming he did not have an opportunity to depose John Yates in the first place. This claim is incorrect, as the motion papers of the parties and the depositions themselves indicate the substitute attorney was present at both. The alternate attorney, acting on instructions of Ramsey's counsel, opted to waive cross-examination of John Yates. This election not to cross-examine is not a valid reason to reopen the record and burden a non-party witness and defense counsel with a second deposition. That portion of the motion requesting the re-taking of John Yates' deposition (Doc. 169) is **DENIED**.

### Motion for Leave to File Additional Briefing and Motion to Strike

The second related matter is Ramsey's motion for leave to file additional briefing (Docs. 169, 175). He has presently filed additional briefing without the Court's leave (Doc. 173), which is why Ladd and Lawson have jointly moved to strike the briefing (Doc. 174). On its face, the defendants' motion has merit. The motion for sanctions was filed on October 29, 2009. Ramsey filed a response on November 27, 2009 (Doc. 150). A hearing was then held on the motion with testimony, cross-examination and argument. Considering that the time to file a response is well overdue and that the motion is fully briefed and argued, additional response would, on its face, be unwarranted.

Since Ramsey lacks compelling reasons to file additional briefing, his briefing will be stricken. Ramsey's additional briefing and his motion for leave to file are premised on the incorrect assumption that the Court intended in its post-hearing Order for the parties to submit further argument. The motion was fully briefed and argued, and the Court in its post-hearing Order did not authorize nor need additional briefing or argument. Instead, the Court set a deadline of February 15 "for the parties to supplement the record of the motion for sanctions by submitting the counter-

affidavit or deposition of Michelle Barnes and/or the deposition of John Gilbert Yates on this matter." (Doc. 166 at 1.) This leave to file additional evidence was for Ramsey's benefit and, as noted above, he took advantage of that leave of the Court, albeit in a mishandled way. As the depositions in question are now before the Court, and as Ramsey has had ample opportunity to brief and argue the motion as well as submit evidence, there is no reason for Ramsey to have submitted additional briefing, much less any reason for Ramsey to have submitted the affidavit of a witness who already testified at the motion hearing and was not one of the two witnesses that Ramsey was supposed to have deposed or secured affidavits in the 60-day period. Because the Court already has Ramsey's cross-examined and sworn testimony on what transpired between him and Yates, any attempt to modify that testimony or to create an issue sufficient for further hearing via affidavit is misplaced because "[a]s a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir.1996)). Accordingly, Ramsey's motion for leave is meritless and will be denied, meaning that defendant's motion to strike will be granted.

## Motion for Sanctions

The Court now takes up defendants Mark Lawson and Shawn Ladd's fully briefed and argued motion for sanctions (Doc. 133). In a nutshell, it claims plaintiff Ramsey attempted to bribe a neighbor, Charles Yates, by offering to share the winning proceeds of this lawsuit with him if Yates would lie and claim to have seen the incident, thereby giving support and credibility to the alleged beating and false arrest of plaintiff Ramsey.[1]

---

[1] The defendants also allege that Ramsey compelled Michelle Barnes to offer false testimony. In support, the defendants offered her affidavit and her deposition which was taken thereafter. The testimony of Ramsey and Barnes is antithetical.

Based on the record before it and the in-court testimony that the parties have proffered, the Court makes the following findings of fact.

Facts

Testifying at the hearing were plaintiff Brian Ramsey and witness Charles Yates. The Court finds Charles Yates to be a credible, disinterested witness with no stake in the outcome of the litigation. He had no knowledge of or relationship with the Herrin, Energy or Williamson County law enforcement officers in the case. He is a former truck driver who has been disabled and confined to his home since a heart attack in June of 2009. He enjoys a good memory and seemed honest and forthright. He answered questions responsively without embellishing in a calm, credible demeanor at the hearing. He looked directly at the attorneys who questioned him and engaged in no furtive conduct. His testimony did not appear contrived, prepared or rehearsed but instead seemed a sincere accounting of what happened at the relevant time. He has no felony convictions or misdemeanors involving dishonesty on his record. His demeanor stands in contrast to that of Brian Ramsey during testimony. Ramsey was irritable, emotional and jumpy. He constantly fiddled with his hands, touched his face and looked around the room while answering questions posed to him, both on direct and cross-examination. All these things considered, the Court feels confident in relying on Yates' version of the events in areas where they conflict with plaintiff Ramsey's.

Brian Ramsey used to live at the intersection of Ward and McNeil streets in Energy, Illinois. He lived there on April 21, 2007, the date on which he alleges the events material to his lawsuit occurred. Yates did not live in Energy, Illinois on that date, and he was not present in any location near Brian Ramsey's yard on that date. Accordingly, he has no firsthand knowledge of what occurred

---

Curiously, plaintiff's counsel, who once represented both Barnes and Ramsey in this matter, has continued his representation of Ramsey despite the obvious conflict and adversity that has developed between them.

on April 21, 2007. About two months later, though, Yates moved from Carbondale, Illinois to a house in Energy on the diagonal across the street from Ramsey. He first met Ramsey on August 21 of that year, the date of his nephew Cody Yates' birthday. He was celebrating Cody's birthday on his back porch, and present with Cody and Charles was Cody's father John Yates, Charles' brother. On that day, Ramsey came over, introduced himself, and socialized. Two days later Ramsey came over again with an audio recorder while both Yates brothers were out on the porch. In the presence of both brothers, Ramsey played a conversation purportedly between him and the chief of police. After the conversation was played, Ramsey told Charles that if he cooperated with Ramsey and testified on his behalf, they would both come into a lot of money because of Ramsey's multimillion dollar lawsuit against the police. Because Charles had not lived across the street at the time of the incident, Ramsey told Charles that he would give Charles details of the event and would tell him what to say. Charles told Ramsey that he wanted nothing to do with it. Ramsey came back a few other times with his recorder and made similar attempts to influence Charles Yates into being one of his witnesses. Ramsey who stands to financially gain in this litigation denies he attempted to improperly influence Yates, who has no financial interest in the outcome.

This sequence of events came to the attention of the defendants when a motor vehicle incident occurred at the location where Ramsey used to live. Ramsey had a falling out with his girlfriend Michelle Barnes, who was once a plaintiff in this action but voluntarily non-suited her case. Ramsey moved away from the McNeil–Ward intersection sometime around June of 2009 but later returned for  his belongings. At that time Yates observed Ramsey kick the door of a grey automobile. Ramsey told Yates he would kill him if he told anyone. Yates related this in a police report and when the matter was investigated he disclosed the potential witness tampering which ultimately resulted in the defendants generating the present motion.

6

Corroborating the testimony of Charles Yates is that of his brother, John Yates who was deposed after the hearing on this matter. He confirmed Ramsey repeatedly offered bribes to him and his brother in exchange for fabricated testimony in this lawsuit. (*See generally* Doc. 168-1).

That Ramsey is not beyond disregarding laws and lawful legal directives in an attempt to influence witnesses is borne out by the fact that he disobeyed this Court's order to not contact, directly or indirectly, witnesses Charles Yates, John Yates or Michelle Barnes (Doc. 166 at 1–2). In direct contravention of this clear directive, Ramsey sent Barnes a Valentine's Day card, despite the fact she "is seeing a state cop now and I'm done with him [Ramsey]."[2] This attempt to curry favor with Barnes by sending a card timed to arrive the day before her deposition is transparent and clearly in violation of the Court's Order.[3]

Analysis

Although defendants captioned their motion for sanctions under both Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, they actually argue that the Court should exercise its inherent authority and not its authority under Rule 11.[4] Inherent authority in this case is the correct way to go, as the allegations are not that Ramsey has filed a misleading document with the Court but instead that Ramsey has tampered with witnesses. The Court does not need statutory authority to sanction parties when they willfully abuse the judicial process. *Salmeron v.*

---

[2] Barnes' credibility in this matter is highly suspect in that she has an axe to grind with Ramsey over their previous relationship and she has admitted filing a false affidavit in this case. However, it is uncontroverted that Ramsey sent the Valentine's Day card, which is marked as an exhibit (Doc. 168-2 at 24).

[3] With his stricken briefing, Ramsey submitted an affidavit in which he admitted sending the valentine but swore that Barnes sent him one first. (Doc. 173-1 at 1.) This affidavit was stricken along with the rest of the untimely briefing, so the Court is not considering it. However, the Court notes that "she did it first!" would not excuse violating the Court's direct order given both in writing and in Ramsey's presence. Besides, nowhere in Ramsey's two motions does he request leave to file briefing so that he could address his blatant violation of the Court's order.

[4] Under Rule 11(c)(4) it is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties.

*Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (citing *Maynard v. Nygren*, 332 F.3d 462, 470–71 (7th Cir. 2003)). A federal court "has the inherent power 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).

Witness tampering is very serious misconduct. *E.g.*, *Ty Inc. v. Softbelly's, Inc.* (*Ty I*), 353 F.3d 528, 537 (7th Cir. 2003). "Trying improperly to influence a witness is fraud on the court and on the opposing party . . . ." *Ty Inc. v. Softbelly's, Inc.* (*Ty II*), 517 F.3d 494, 498 (7th Cir. 2008). Litigants that attempt to coerce witness into giving false testimony abuse the truth-seeking function of the courts and obstruct the courts' ability to solve disputes accurately and efficiently. Not only does witness tampering interfere with the judicial branch's ability to function properly, it is a federal crime. *See* 18 U.S.C. § 1512(b) (2006) ("Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both."). As such, tampering by the parties deserves the harshest sanction that the Court can deliver given the seriousness of the matter and in order to protect the judicial process. When the plaintiff is the one that commits the offense, dismissing the case is sensible as the very individual that seeks the Court's jurisdiction to solve his dispute (i.e., the plaintiff) is the party thwarting the Court's ability to get to the truth.

A "decision that a party's misconduct is serious enough to justify dismissal with prejudice" is within the Court's sound discretion. *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Am. LLC*, 516 F.3d 623, 625 (7th Cir. 2008); *see also Salmeron*, 579 F.3d at 793 (noting that the Court's findings of fact are untouched unless clearly erroneous) (quoting *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008)); *id.* (noting that a reversal for sanctions under inherent authority is justified only when "(1) the record contains no evidence upon which the court could have rationally based its

8

decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary" (quoting *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008))). The Court, however, is not alone in finding that witness tampering deserves dismissal. The Seventh Circuit has consistently condemned witness tampering, suggesting that the practice deserves the Court's harshest sanction. *E.g.*, *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 537 (7th Cir. 2003) (noting that, if the judge determined that witness tampering on the party of Ty had taken place, that "there would have been compelling evidence of serious misconduct . . . requiring a commensurately severe sanction, quite possibly dismissal of Ty's suit." (citing *Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 884 (7th Cir. 2001))); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1178–79 & n.15 (3d Cir. 1993)); *Weibrecht*, 241 F.3d at 884 ("Of course, if Shane or McGlynn (or both) attempted to influence a witness's testimony, rather than merely to interview Bader to learn what information he had about the accident, that conduct would be a serious infraction that could have warranted a dismissal with prejudice.").

The party seeking sanctions has the burden of proving that the sanctionable conduct occurred. *See Chambers*, 501 U.S. at 50–51. Ramsey argues that clear and convincing evidence is required to sanction under inherent power. In support, he cites *Ty II*, which is odd because the case puts into serious doubt whether clear and convincing is the appropriate standard for litigation fraud:

> [T]he asymmetry [inherent in penalizing fraud] is attenuated when instead of suffering a judgment for having committed fraud in one's business activities, a litigant is sanctioned for fraud in the litigation itself. The sanction will often be written off by the larger community containing the [perpetrator]'s peers—if the sanction is even noticed—as a mere battle scar of litigation. So we are led to doubt that there is any utility in insisting on proof by clear and convincing evidence in a case such as this, and getting entangled in disputes over whether [the perpetrator]'s conduct should be described as fraud and if not whether there should nevertheless be a category of litigation sanctions that require a heightened standard of proof.

517 F.3d at 499. Additionally, *Ty II* was not decided on the question of clear and convincing evidence but instead on the question of non-proportionate *monetary sanctions*, which is what the trial court had done. *Id.* at 499–500. Ramsey also argues that the standard of clear and convincing evidence is roughly equivalent to "proof beyond reasonable doubt." This argument is doubtful as well. *E.g.*, *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (1996) (noting that equating "clear and convincing" with "reasonable doubt" is a serious error). Which standard is correct does not matter in this case, though, as the Court finds that the evidence is clear and convincing that Brian Ramsey attempted to bribe Charles Yates to influence his testimony in this matter.

Granted, thanks to Charles Yates' good sense, Ramsey only *attempted* to tamper with witnesses without actually getting that witness' tampered testimony on the record. Although it seems that the misconduct of Ramsey has been discovered before the defendants' case was prejudiced, the Court does not need to assess the impact of a misbehaving litigant's *willful* conduct on the litigation before imposing sanctions. *Salmeron*, 579 F.3d at 797 (citing *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993)). Although the Court can consider how prejudiced the one party is because of any misconduct by the other, the Court can still impose a sanction to reprimand the offender for "violations of the judicial process" and "to deter future parties from trampling upon the integrity of the court." *Id.* (citing *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003)). Willfulness is present here, and the Court believes it is appropriate to deter any further trampling upon its integrity.

Dismissal of a lawsuit is an extreme sanction, one that must be exercised with great restraint. But the Court has a duty to safeguard the integrity of judicial proceedings, and dismissal is warranted where needed to sanction conduct that abuses the judicial process. The Court has considered less severe sanctions but the one best tailored to address the misconduct at hand and deter other is dismissal. Monetary sanctions are unlikely to deter others as effectively and it is doubtful Ramsey has

the means to pay them. There is no witness to bar or exclude since the fabricated testimony never came to fruition.

**Conclusion**

The Court **DENIES** Ramsey's motion for additional deposition (Doc. 169). The Court also **DENIES** his motion for leave to file additional briefing (Doc. 175) as the motion for sanctions is fully briefed and argued. For the same reason, the Court **GRANTS** the defendants' motion to strike (Doc. 174) and **STRIKES** the untimely brief (Doc. 173).

Additionally, as the Court is convinced that Ramsey has engaged in witness tampering, the Court **GRANTS** the motion for sanctions (Doc. 133) and **DISMISSES** the suit of Ramsey **WITH PREJUDICE**. The clerk of court is directed to close the case and enter judgment in favor of defendants that Brian Ramsey take nothing in his suit.

**IT IS SO ORDERED.**

**DATED March 24, 2010.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**